

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-22-2005

# Balthazar v. Atl Cty Med Ctr

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3772

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Balthazar v. Atl Cty Med Ctr" (2005). *2005 Decisions.* Paper 977.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/977

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-3772

———

ENEZ BALTHAZAR,

<u>Appellant</u>

v.

ATLANTIC CITY MEDICAL CENTER; ATLANTIC CITY MEDICAL CENTER
COMMUNITY HEALTH SERVICES; BARBARA HENDERSON, M.D.; JOSEPH
DESTEFANO, M.D.; ALLAN FELDMAN, M.D.; PHILLIP KORZENIOWSKI, M.D.;
DESTEFANO, FELDMAN, KAUFMAN & KORZENIOWSKI, P.A.; DESTAFANO,
FELDMAN & KAUFMAN, P.A.; UNIVERSITY OF MEDICINE &
DENTISTRY OF NEW JERSEY, SCHOOL OF OSTEOPATHIC MEDICINE;
RICHARD COOPER, D.O.,

<u>Appellees</u>

———

On Appeal from the United States District Court
for the District of New Jersey
(Dist. Ct. No. 02-CV-1136)
Before:  Hon. Stephen M. Orlofsky

Argued June 9, 2005

———

Before: AMBRO, VAN ANTWERPEN, and TASHIMA,* <u>Circuit Judges</u>.

(Filed:  June 22, 2005 )

———

\*  The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the
United States Court of Appeals for the Ninth Circuit, sitting by designation.

OPINION OF THE COURT

VAN ANTWERPEN, <u>Circuit Judge</u>.

Appellant Enez Balthazar brought a medical malpractice suit in New Jersey state court that was dismissed with prejudice when her attorney failed to file an affidavit of merit as required by state law. Before a state appeals court affirmed that dismissal, Balthazar brought this action based upon the same events she had alleged in state court. Pursuant to Fed. R. Civ. P. 12(b)(6), the District Court dismissed the complaint without prejudice, granting Balthazar leave to move to file an amended complaint. Before she did so, a state appeals court affirmed the dismissal of her state court action. Balthazar subsequently moved to amend her federal complaint. The proposed amended complaint sounded not only in the same underlying allegations already rejected by the state appellate court, but also essentially in the same underlying allegations already once dismissed by the District Court. The District Court denied Balthazar's motion on several grounds, including *res judicata*, forming the basis for this appeal. The District Court also sanctioned Balthazar's attorney, requiring him to attend continuing legal education classes. For the reasons that follow, we will affirm.

I.

The origins of this appeal may be summarized as follows. After filing a medical malpractice action in New Jersey state court on behalf of his client, Ms. Balthazar, attorney Frank Branella failed to file an affidavit of merit in support of his client's action. The omission, which has never been disputed and is required by New Jersey law, caused Ms.

Bathazar's medical malpractice action to be dismissed with prejudice on May 14, 2001. *Balthazar v. Atlantic City Med. Ctr., et al.*, N.J. Super. Ct. Law Div., Camden County, No. L-4527-99 (2001). A state appellate court would later affirm that dismissal on March 5, 2003. 358 N.J.Super. 13, 816 A.2d 1059 (N.J. Super. App. Div. 2003).[1]

While the state appellate decision was pending, Ms. Balthazar, through Mr. Branella, filed a complaint in federal court against the same defendants. The federal complaint alleged that defendants' acts subsequent to their medical treatment of Ms. Balthazar established a pattern of mail or wire fraud and other activities constituting predicate offenses under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.* ("RICO").[2] This federal complaint arose from the same conduct at issue in the dismissed state court action; it alleged that the same defendants had attempted to conceal the same acts of medical negligence that had occurred during the same (and only) medical procedure that defendants had ever performed on Ms. Balthazar – an abdominal hysterectomy on January 27, 1998. Specifically, the federal complaint alleged the defendants had conspired to use false records to defeat Ms. Balthazar's state court case and to defraud Ms. Balthazar by increasing the cost

---

[1] Balthazar also filed a Petition for Certification to the New Jersey Supreme Court that was denied on June 5, 2003.

[2] The civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c).

of litigation, thereby wasting her assets.[3]  In addition to this RICO claim, Balthazar's federal

compliant alleged a conspiracy to deny her due process and equal protection under 42 U.S.C.

§ 1985 as well as related state law claims.

Subsequent to the filing of this federal complaint, a New Jersey appellate court

affirmed, in a published opinion, the dismissal of Ms. Balthazar's state court medical

malpractice action.  As discussed *infra*, central to our analysis in this case is the question of

what the state appellate court adjudicated as to Ms. Balthazar's state court litigation.  On its

face, the state appellate court decision states in pertinent part:

> Plaintiff Enez Balthazar appeals from an order of May 23, 2000
> dismissing with prejudice her claims for medical malpractice
> against [the defendants] as the result of [her] failure to comply
> with the requirements of the affidavit of merit statute, N.J.S.A.
> 2A:53A-26 through -29.  Balthazar also appeals from an order
> of May 14, 2001 denying her motion to amend her complaint to
> allege claims of battery and fraudulent concealment.  We affirm.
>
> . . .
>
> On appeal, Balthazar argues that her complaint should have
> been preserved because of the allegedly fraudulent maintenance
> of relevant records . . . .  Balthazar also . . . claims error in the
> court's denial of her motion to amend her complaint . . . .

---

[3]  As Balthazar concedes in her briefs before this Court, she had previously filed a
state law malpractice action against the same defendants alleging the same underlying
harm arising out of a hysterectomy performed on January 27, 1998 by or through
Appellees.  Balthazar named in her state court action defendants Atlantic City Medical
Center, Atlantic City Medical Center Community Health Services; Barbara Henderson;
M.D.; Joseph DeStefano, M.D.; Allan Feldman, M.D.; Phillip Korzeniowski, M.D.;
Destefano, Feldman, Kaufman & Korzeniowski, P.A.; Richard Cooper, M.D.; and
University of Medicine & Dentistry of New Jersey School of Osteopathic Medicine.  Dr.
Larry Kaufman was named in the state court action but not in the federal court action.

. . .

> . . . Balthazar argues in her brief, and counsel argued orally that:
> 'The pivotal issue is whether appellant must rely on the
> fraudulent medical record that has been provided by respondents
> . . . . Appellant can prove the record is fraudulent and unreliable
> . . . .

*Balthazar v. Atlantic City Medical Center, et al.*, 358 N.J. Super 13, 16-21, 816 A.2d 1059, 1061-63 (2003). With respect to these issues, the appellate court determined that:

> We do not find patent the 'fraud' that plaintiff claims to exist,
> and find no evidence that would suggest that it occurred . . . .
> Thus, this is not a case in which there is evidence of deliberate
> destruction or alteration of medical records in anticipation of
> suit . . . .

*Id.* at 21, 816 A.2d at 1064. Further, as to allegedly fraudulent acts arising out of the surgery, the appellate court also determined that the allegedly fraudulent document – a second operative report in Balthazar's hospital chart – was substantially similar to the first operative report, and that defendants had provided a reasonable explanation for the presence of the second operative report. As such, it concluded, "[a]ny 'fraud' was thus inconsequential." *Id.* at 22, 816 A.2d at 1064. In so concluding, the appellate court also rejected claims by Balthazar that defendants had "deliberately misled her" about certain sutures, finding "[n]o support for the claim of deliberate misinformation . . . in the record." *Id.* at n.8. Further as to the allegedly fraudulent acts that Balthazar had used to support her motion to amend her complaint, the appellate court stated:

> As a final matter, Balthazar argues that the court committed

> error in denying as lacking factual support her motion to amend her complaint to assert causes of action for battery and fraudulent concealment . . . .
>
> . . .
>
> . . . For the reasons discussed at length earlier in this opinion, we find no grounds for a claim of fraudulent concealment. We thus find no abuse of discretion by the trial court in denying Balthazar the right of amendment.

*Id.* at 26-27; 816 A.2d at 1067-68. For these reasons, the state appellate court affirmed the state trial court in its entirety, including the state trial court's dismissal of Balthazar's case with prejudice for failing to comply with the requirements of New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A-26 through -29. *Id.*

Meanwhile, in federal court, before the state appellate court had rendered this decision, Appellees the University of Medicine & Dentistry of New Jersey and Dr. Richard Cooper moved to dismiss Balthazar's federal complaint pursuant to Fed. R. Civ. P. 12(b)(6). Because the state appellate court had not yet rendered its opinion, summarized above, the District Court denied the motion on the grounds that Balthazar's federal claims were not plainly "inextricably intertwined" with a state court adjudication.

Subsequently, Appellees the Atlantic City Medical Center and Atlantic City Medical Center Community Health Services also moved to dismiss the federal complaint pursuant to Fed. R. Civ. P. 12(b)(6). The District Court granted that motion on March 3, 2003, dismissing Balthazar's claims without prejudice and granting Balthazar leave for 30 days to move to file an amended complaint. Balthazar does not appeal from that ruling.

6

Two days latter, as summarized above, the state appellate court affirmed the dismissal of Balthazar's state court complaint and the denial of her motion to amend her complaint to allege claims of, *inter alia*, fraudulent concealment. Upon learning of the state appellate decision, the District Court in this case notified Balthazar's attorney on March 12, 2003 that it had reviewed the state appellate decision and that, should he move to amend based upon the events and allegations already adjudicated therein, the District Court would carefully scrutinize the proposed amended complaint for potential Rule 11 violations.

Ms. Balthazar, through her attorney Mr. Branella, subsequently so moved. The District Court reviewed the proposed amended complaint and issued an order to show cause as to why Mr. Branella had not violated Rule 11 in light of the state appellate court's adjudication. This prompted the defendants to file several motions for sanctions against Mr. Branella, as well as cross-motions by the parties to disqualify their respective counsel. In an opinion and order filed August 15, 2003, the District Court (1) denied Balthazar's motion for leave to file the amended complaint and (2) imposed non-monetary sanctions on Mr. Branella pursuant to Rule 11(b)(1). The District Court determined that Balthazar's proposed amended complaint (I) failed to state claims under RICO and 42 U.S.C. § 1985; (ii) was barred by the doctrine of *res judicata*; and (iii) was also barred by the *Rooker-Feldman* doctrine. The District Court then denied the parties' motions for sanctions and disqualifications. This appeal followed.

II.

7

This case presents two questions of jurisdiction that we must resolve at the outset. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . .") (internal quotation omitted); *Benchoff v. Colleran*, 404 F.3d 812, 815 (3d Cir. 2005) (same). We first determine the status of the order from which Balthazar appeals, the District Court's August 15, 2003 order denying her motion for leave to file an amended complaint. We have jurisdiction over appeals "from all final decisions of the district courts of the United States," 28 U.S.C. § 1291, but here, from our review of the record, it appears there was neither a final order nor a dismissal of Balthazar's claims with prejudice after the District Court denied her motion for leave to file an amended complaint.

Guided by the Supreme Court's directive that we employ a "practical rather than a technical construction" of § 1291's finality requirement, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), we have previously held that a plaintiff can convert a dismissal with leave to amend into a final order by electing to stand upon the original complaint. *See, e.g., Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir.1976) ("Only if the plaintiff . . . declares his intention to stand on his complaint . . . [does] the order become final and appealable."). Here, however, the record shows that Balthazar did not so stand; indeed, as discussed, she sought to amend and appeals only from the denial of her motion to do so. Nevertheless, we believe that the grounds of the District Court's ruling, especially as to the preclusive effect of the state court adjudication of Balthazar's claims,

8

make plain the District Court's intent to dismiss her federal claims with prejudice. As such, requiring Balthazar to return to the District Court now would wastefully elevate form over substance. *See, e.g., Schrob v. Catterson*, 948 F.2d 1402, 1407 (3d Cir.1991) (holding district court's use of transcript as a final order, while inappropriate, did not deprive us of jurisdiction). We thus conclude that, with the 30-day amendment period in the District Court's March 3, 2003 order having expired, the District Court's subsequent August 15, 2003 order had the effect of dismissing Balthazar's federal claims with prejudice, thus rendering a final decision for purposes of 28 U.S.C. § 1291.

We believe our conclusion is supported by our decision in *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 279 (3d Cir. 1992) (holding "no practical purpose would be served" in dismissing an appeal where defendants did not question the appeal's timeliness and where there was but little doubt that the district court would, on remand, dismiss the claims with prejudice rather than revise its ruling). With no Appellee in this case having questioned the timeliness of this appeal either in briefing or at oral argument, and it being clear from the record that the District Court here would dismiss with prejudice on remand, the reasoning of *Shapiro* counsels that we treat the August 15, 2003 order as a final decision for purposes of § 1291.

Our second jurisdictional question is whether we may consider Mr. Branella's appeal in his own capacity, as distinct from his client's, from the District Court's imposition of Rule 11 sanctions against him. Citing Rule 3 of the Federal Rules of Appellate Procedure and a

9

1992 decision of this Court, Appellees contend that we lack jurisdiction to review the imposition of sanctions on attorneys who file notices of appeal only in the names of their clients. *See Collier v. Marshall, Dennehey, Warner, Coleman & Goggin*, 977 F.2d 93 (3d Cir. 1992); Fed. R. App. P. 3(c). Generally speaking, this is true: the requirements of Rule 3(c) are jurisdictional, see *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 320-21 (1988), and Rule 3(c) requires that a notice of appeal identify each appellant. Mr. Branella, in turn, observes that *Torres* emphasizes that "mere technicalities should not stand in the way of consideration of a case on the merits." *Id.* (internal quotations omitted). He further argues that Rule 3(c) was amended on December 1, 1993, after our decision in *Collier*, and that, under the revised rule, a notice of appeal may specify the parties taking the appeal by "naming each one in the caption *or* body of the notice." Rule 3(c)(1)(A) (emphasis added). Mr. Branella further observes a second revision to the Rule stating that "[a]n appeal must not be dismissed for . . . failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4).

While we have not applied our decision in *Collier* to Rule 3 as revised, we have held that "[t]he purpose of Rule 3(c)'s identification requirement is to provide notice to the court and the opposing parties of the identity of the appellants." *In re Continental Airlines*, 125 F.3d 120, 129 (3d Cir. 1997) (citing *Torres*, 487 U.S. at 318). Such purpose has been satisfied here. Notwithstanding his absence in the caption of the notice of appeal, Branella identified himself in its body, identified with specificity the sanctions levied against him, and

10

expressly gave notice that those sanctions would be appealed, albeit by his client. We believe that, in this case, such information, set forth in a case with a single appellant who was not sanctioned in her own capacity, sufficiently evidences attorney Branella's intent to appeal alongside his client. *See* Rule 3(c)(4); *see also* Rule 3, 1993 Advisory Committee Note (noting that the 1993 amendment to Rule 3(c) was intended to "make[] it clear that dismissal of an appeal should not occur when it is otherwise clear from the notice that the party intended to appeal").

## III.

Our jurisdiction satisfied, we summarize the applicable standards of review. This Court reviews for abuse of discretion a district court's refusal to grant leave to amend a complaint on grounds of futility. *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 281 (3d Cir. 2004). We likewise will not disturb a district court's decision to impose Rule 11 sanctions absent an abuse of discretion. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990); *Waltz v. County of Lycoming*, 947 F.2d 387, 288 (3d Cir. 1992).

## IV.

Ms. Balthazar first contends that the District Court abused its discretion in denying her motion for leave to file her amended complaint. The Federal Rules of Civil Procedure require that leave to file an amended pleading "shall be freely given as justice so requires." Fed. R. Civ. P. 15(a); *see also Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (finding a "strong liberality" in permitting leave to file an amended pleading). However, leave to file

11

is not without limits. *See, e.g., Forman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is appropriate in circumstances "such as . . . bad faith, . . . undue prejudice to the opposing party . . . , [and] futility of amendment"). Here, the District Court determined that Balthazar's amended complaint was futile on several alternative grounds, a determination that appears correct in all respects. That said, the Supreme Court has instructed that, in cases such as this involving state court adjudications, "[d]isposition of the federal action, once the state-court adjudication is complete, [is] governed by preclusion law." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, ___ U.S. ___, 125 S. Ct. 1517, 1527 (2005). Accordingly, we will affirm on that basis alone.

The preclusion analysis in this case is straightforward. "'It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Walker v. Horn*, 385 F.3d 321, 337 (3d Cir. 2004) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *see also Paramount Aviation Corp. v. Augusta*, 178 F.3d 132, 135 (3d Cir. 1999) ("federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court").[4] Under New Jersey law, the following elements are required for *res judicata*: (1) the final judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must

---

[4] Additionally, as the Supreme Court explained in *Exxon*, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon*, 125 S. Ct. at 1527 (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)).

be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. *See McNeil v. Legislative Apportionment Comm'n of the State of N.J.*, 117 N.J. 364, 395, 828 A.2d 840, 859 (N.J. 2003); *see also Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592, 599 (N.J. 1991).

Here, as to the first element, it is undisputed that the state court adjudication was valid and final, leaving only the questions of whether there has been an adjudication on the merits and whether the claims grow out of the same transaction or occurrence. Balthazar argues both in the negative. She first suggests that an appellate court's affirmance of a dismissal with prejudice for want of an affidavit of merit is not an adjudication on the merits. The argument is unpersuasive because it is incorrect as a matter of New Jersey law. Under New Jersey law, "a judgment of involuntary dismissal or a dismissal with prejudice constitutes adjudication on the merits as fully and completely as if the order had been entered after trial." *Velasquez v. Franz*, 123 N.J. 498, 507, 589 A.2d 143, 148 (1991) (internal quotation omitted). More recently, the New Jersey Supreme Court has determined that there is no reason to depart from *Velasquez*'s well-settled principle in the scenario presented here, where the action was dismissed with prejudice for failure to file an affidavit of merit as required by the New Jersey affidavit of merit statute:

> Like the dismissal addressed in *Velasquez*, a dismissal under the Affidavit of Merit [statute] involves a failure to comply with the statute that the plaintiff cannot cure merely by amending the complaint. Non-compliance does not inhere in the complaint

> but in the failure to satisfy the essential, collateral affidavit requirement. The plaintiff would be prohibited by *res judicata* based on the Court's ruling in *Velasquez* from filing a new but identical claim.

*Cornblatt v. Barow*, 153 N.J. 218, 246 708 A.2d 401, 415 (1998). In addition to this controlling authority establishing that Ms. Balthazar's state court case was adjudicated on the merits as a matter of law, it is clear that the state appellate court, as discussed *supra*, thoroughly considered Ms. Balthazar's claims and evidence sounding in fraudulent concealment with respect to both her argument against dismissal and her argument that the trial court erred in refusing her motion to amend.

Balthazar next suggests that her federal action arises from a separate transaction or occurrence, but we are not persuaded by her arguments that she could not raise her federal claim in her state court action and that she did not discover the facts supporting her federal claim until the fall of 2001. First, Balthazar could have presented her federal RICO claims in state court. *See Tafflin v. Levitt*, 493 U.S. 455 (1990) (state courts have concurrent jurisdiction over claims brought pursuant to federal RICO statute). Second, Balthazar made fraudulent concealment claims arising out of her hysterectomy procedure as early as May 14, 2001, the date the lower state court denied her motion to amend her state complaint to allege such claims. 816 A.2d at 1061.

The remaining element necessary for *res judicata* is not seriously in dispute, as the parties in the federal action are identical to the parties in the state court action, with the minor exception that Dr. Larry Kaufman was named as a state court defendant but not as a federal

14

defendant. In her federal complaint, Balthazar sued two practices that Kaufman was affiliated with, DeStefano, Feldman, Kaufman & Korzeniowski, P.A., and DeStefano, Feldman & Kaufman, P.A. Balthzar does not allege that Kaufman was negligent or conspired to cover up the alleged negligence; she alleges that she underwent a hysterectomy performed by Dr. Henderson, an employee of the medical group of DeStefano, Feldman, Kaufman & Korzeniowski, P.A., with the assistance of Dr. Korzeniowski, in the presence of a resident, Dr. Richard Cooper. Given Dr. Kaufman's lack of direct involvement as well as the fact that Balthazar has not argued that Dr. Kaufman's absence prohibits preclusion, we believe his absence is immaterial.

For all of these reasons, the elements of *res judicata* under New Jersey law are thus easily satisfied by the facts of this case.

Finally, we observe counsel's correct concession at oral argument that, even if Ms. Balthazar were granted leave to file another amended complaint, she would not, and could not, substantially depart from the amended complaint already rejected by the District Court. Because no amendment to Ms. Balthazar's federal complaint could abate the preclusive effect arising from the adjudication of her state court complaint, her proposed amendments were futile, as would be any future proposed amendments. Therefore the District Court did not abuse its discretion in denying leave to amend.[5]

IV.

---

[5] As such, we need not reach the District Court's alternative grounds for denying the motion.

The final issue before us is whether the District Court abused its discretion in imposing non-monetary Rule 11 sanctions on Mr. Branella for filing the proposed amended complaint. Upon review of the record, we conclude the sanctions were proper in all respects. As the District Court correctly noted in its analysis of the substantive allegations in the proposed amended complaint, they were almost precisely parallel to Balthazar's unsuccessful state court claims. They were also almost identical to allegations that the District Court had already dismissed in Balthazar's original federal complaint. As such, the District Court acted within its discretion, as sanctions are proper when, *inter alia*, a party "insist[s] upon a position after it is no longer tenable . . . ." Fed. R. Civ. P. 11 Advisory Committee's Note.

Under Rule 11, the appropriate sanction must be limited to one "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Among the sanctions contemplated by Rule 11 for this purpose are compulsory attendance of legal education classes. *See, e.g., Gaiardo v. Ethyl Corp.*, 835 F.3d 479, 482 (3d Cir. 1987). This is precisely what the District Court did here, ordering Mr. Branella to attend two continuing legal education courses, one entitled Federal Practice and Procedure, the other entitled Attorney Professionalism and Rules of Professional Conduct. As the titles of these educational courses indicate, they constitute no more of a sanction than is necessary for deterring the conduct at issue here. Accordingly, for this reason as well, we discern no abuse of discretion on the part of the District Court with respect to the sanctions imposed against Mr. Branella.

V.

For the foregoing reasons, the August 15, 2003 order of the District Court is affirmed.